Totten, J.
delivered the opinion of the court.
The material facts so far as we need refer to them, are briefly these: — Robert Allen died in 1811, leaving his last will and testament, in which is the following bequest, to wit:
“I give and bequeath to my wife Martha Allen, two negroes, *141 one by the name of Prissy, the other by the name of Letty, to hold during her natural life, and at her decease, to become the property of my first wife’s children, Robert Allen, James Allen, Reuben Allen, Polly Lemons, Fanny Farnsworth.”
Martha Allen, the tenant for life, died in 1848, by which time there was a numerous issue and increase derived from said slaves, and the plaintiffs seek by this bill to recover their interest in the remainder therein.
We are to consider that portion of the case only, which relates to the slaves in possession of defendant Polly Lemons. These slaves are five in number, that is to say, Eliza and her four children; the slave Eliza is a daughter of the slave Prissy, named in the will, aud she and her increase are to be held therefore, as subject to the limitations contained in said will, unless the title has been changed by the act of the parties interested.
The answer of defendant Polly Lemons repels the plaintiff’s claim to the slaves Eliza and her children, and states, that some thirty years past, the slave Prissy gave birth to Eliza and died, leaving Eliza a helpless infant, that by request and consent of the tenant for life, and those interested in remainder, under the provisions of said will, she, said defendant, agreed to take charge of said infant child and to raise and protect it — they, on their part, agreeing that for so doing, she should have the child as her. absolute property. Such is the substance of the answer; and it further states,that she, said Polly Lemons, did take charge of said child and nurture and raise it at much trouble, care and expense. The children of Eliza have also been so far an expense, the oldest being only some ten years of age.
Polly Lemons was a feme covert, married to Samuel Lemons, at the date of said will and at the date of said gift. The slave Eliza came to their possession in 1819, and so continued till 1827, when Samuel Lemons died, and ever since, has *142 been in the adverse possession and use of Polly Lemons, she claiming the slave as her own property.
The bill is not filed against the personal representative and distributees of Samuel Lemons, deceased, but it seeks to recover said slaves to the extent of plaintiff’s interest from Polly Lemons.
There is much proof, and the depositions of the children of Polly Lemons of her said marriage, are taken in the case to support her title. The chancellor was of opinion, that the plaintiffs have no interest in the slaves here in question, and so decreed, from which decree the plaintiffs have appealed to this court.
Several questions have been raised by counsel: and, first, it is said that the children of Polly Lemons are incompetent witnesses to support her title; because, if there was a gift to Polly Lemons and possession delivered as before alledged, the title to the slave became vested in Samuel Lemons, in virtue of his marital rights, and at his death, his children, the said witnesses became his distributees and interested in the property. We admit this to be the legal effect of the facts stated. But in the circumstances of this case, does it render them incompetent as witnesses.
In 1 Greenleaf on Ev., sec. 390, it is said, that “the true test of the interest of a witness is, that he will either gain or lose by the direct legal operation and effect of the judgment; or, that the record will be legal evidence for or against him in some other action. It must be a present certain, and vested interest, and not an interest uncertain, remote or contingent.”
In section 389, of the same work, it is further said, “the disqualifying interests of the witness must be in the event of the cause itself, and not in the question to be decided. His liability to a like action or his standing in the same predicament with the party, if the verdict cannot be given in evi *143 dence for or against him, is an interest in the question only, and does not exclude him.”
It seems to us, that these principles are well and truly extracted from the numerous authorities and cases on this subject. See also Cowan & Hill’s notes, part 1, note 84, and cases therein cited.
A witness has such interest as is stated in the rule before referred to, if the effect of his testimony will be to create or increase a fund in which he may be entitled to participate, or to prevent the diminution of a fund created for his benefit. See cases illustrating this principle in Cowan & Hill’s notes, part 1, note 108.
Now to test the present case by these principles: — will the witnesses gain or lose by the direct legal effect of the decree? The suit is not against the estate in which they are interested, but against Polly Lemons, who holds the slaves as her own property and for her own use, not admitting that the witnesses have any interest in common with her. If the decree be in her favor, the witnesses will have no greater interest in the property than they had before; if it be in favor of the plaintiffs, they will have no less. Not being parties to the suit, their rights cannot be affected by the decree. Nor have they, for the same reason, any interest in the record and it could not be given in evidence, either for them or against them, in any other suit concerning the property in which they might be parties.
Nor will a decree in favor of defendant increase any fund or property in which the witnesses have a right to participate. Its effect would merely be to retain the slaves in defendant’s possession, without settling any question of right or title, as between the witnesses and the plaintiffs. And the defendant’s recovery would be for herself, as upon her separate and independent claim, in which she does not admit or recog-nise any interest in the witnesses. They would not have any *144 right to participate in her recovery, that is, the decree would not be any evidence for them or confer any new right upon them — but they would still have such rights, and such rights only as they possessed before the decree was made.
If this were not so, the converse would be true — they would suffer prejudice if the decree were for the plaintiffs, that is, they would be concluded by it; and yet, it is evident that such would not be the case. If from neglect or other cause, the plaintiffs were' permitted to recover the possession of the slaves, yet, such recovery would not affect any right which may be vested in the witnesses, or prejudice any suit they might institute for the recovery of the property.. What may be the state of the title, as between Polly Lemons and the witnesses referred to, it is not material here to enquire. We can only see, that she sets up an independent title in herself, in virtue of the gift and the adverse possession, and it maybe entirely valid as against said witnesses. That is a matter of contest for them. But in the state and condition of this suit, it is very evident that her possession is not their possession, and her recovery would not be, in any sense, their recovery.
Regarding these witnesses as competent, they fully sustain the defence set up by Polly Lemons in her answer. There are, however, other witnesses, Thomas Jones, John Creamer and John Robeson, of unexceptionable competency, and whose testimony goes to establish the same facts. Upon their testimony alone, we could not doubt but that the plaintiffs made the gift in a manner substantially as stated in the-answer.
2. Taking it for granted then, that such gift was made, the next enquiry is, as to its legal effect.
It was a parol gift and delivery of possession, prior to the act of 1831, ch. 90, a parol gift or sale of a slave accompanied with possession, passed a good and valid title as between the parties, but not as to creditors and purchasers without notice. Such was the construction given to the act of 1784; it is not *145 material to the present case, that we should oiler any construction of the act of 1831, on the same subject, as the transaction in question was before that act. See Douglass vs. Morford, 8 Yer. R. 384, Williams vs. Walton, 8 Yer. R. 387, Gupton vs. McCauley, 3 Hum. R. 468, Tatum vs. Jamison, 2 Hum. R. 300, Davis vs. Mitchell, 5 Yer. R. 287.
The right of defendant, as agah^tsSf^^^F^ffisworth, depends upon the gift, and it doeof an ad-vei'se possession to perfect it. „.
But this rule can only apply wfilfl'-f? mere is no peculiar disability or restriction imposed or®th^^^^áá§t^iepation. It cannot in the present case be h<jMapplical»l«^o the feme covert, however conclusive it may be on tro rights of the husband. Thus in Wilks vs. Fitzpatrick, 1 Hum. R. 57, the husband and wife united in a deed of assignment of her legacy, not yet reduced to possession, but the wife was not privately examined as to its execution — the deed was held inoperative and void as to the rights of the wife, and the property assigned, was therefore, still subject to her equity. So in Cdplinger vs. Sullivan, 2 Hum. R. 548, it is held, that no assignment by the husband of reversionary choses in action, or other rever-sionary equitable interests of the wife, even with her consent and joining in the assignment, will exclude her rights of sur-vivorship. This is a well settled principle founded in justice and policy. See 2 Story’s Eq. Jur., sec. 1413.
The wife’s equity therefore, remains and attaches upon this property: — it is in no wise effected or prejudiced by reason of the gift and agreement in question, and may now be asserted in a suit instituted by her next friend for that purpose, or in case she survive her husband, the right will survive.
But the husband, Henry Farnsworth, occupies a different position, and as we have seen, is precluded and bound by the gift and the possession under the gift. This suit, instituted by him in the name of himself and wife, for the recovery of the *146 slaves and to reduce them into his possession, does not contemplate any separate provision for the wife; on the contrary, the effect of his recovery would be to defeat the wife’s equity, by reducing the property to the husband’s possession.
In the view we have taken of this case, the plaintiff fails in his suit upon the ground that he had made a valid gift of the property in question, to the defendant Polly Lemons. But it may be observed, that if the gift were even invalid, for want of written evidence of title, yet, in view of the facts and circumstances of the case, of the motives and considerations which induced the gift to be made, we apprehend, that the plaintiff could derive no aid from a court of equity in support of a claim so unjust and unreasonable in itself. The court would not aid him in the unjust and unequitable act of revoking his gift.
We, therefore, affirm the decree of the chancellor, dismissing the bill as to the defendant Polly Lemons, in respect to the slaves here in question — but the dismissal will be without prejudice in anywise, to the plaintiff Fanny Farnsworth.
*147 CASES ARGUED AND DETERMINED IN THE . SUPREME COURT OE TENNESSEE. NASHVILLE: DECEMBER TERM, 1850.